LLC, Paul J. Pascuzzi, Council for Appellant Nations First Capital, LLC, Noel C. Crowley, Council for Appellee Jean G. Desombre, DBA, ALE Transportation. Just because I see we don't have Mr. Crowley by video, can I make sure the audio is working, Mr. Crowley? Yes, I hear you very clearly. Very good. Okay, Mr. Pascuzzi, you may reserve some time if you'd like. I would, Your Honor, so five minutes, please. Thank you, I'll try to let you know right away. Thanks. Okay. Thank you. Good afternoon, Your Honors. We've appealed the bankruptcy court's order reconsidering the disallowance of a claim. The threshold question is under 502J. Was the requisite cause under 502J established? And the answer is no. Under the circumstances of this case, cause is determined under Federal Rule of Civil Procedure 60B. The court examined and rejected a finding of cause under 60B1, the excusable neglect standard. That is because the claim objection was deemed received by counsel at the address in the proof of claim, that is the Bucknum Rule, and it was actually sent twice. The claim objection was sent to there and then also a notice of errata because there was a page missing from an exhibit. It was also served on the claimant himself at the home address that was also listed in the proof of claim. Again, twice. There's been no evidence whatsoever as to the claimant himself not receiving the objection. The failure to respond was the neglect and the bankruptcy court actually found there was no cogent excuse for the failure to respond. So the excusable neglect under 60B1 was expressly not found by the bankruptcy court. And the panel doesn't have to second guess that finding because the bankruptcy court found it. Where the court erred here, Your Honors, is by moving to the catch-all provision under 60B6. The Supreme Court says you can't do that when one of the other provisions of 60B apply. That's the Gonzales v. Crosby case. The Ninth Circuit also says you can't do that under DeLay v. Gordon. And even the case cited by the bankruptcy court, Community Dental Services v. Tanney, says that. The bankruptcy court noted a federal policy to hear matters on the merits. But that requires an opportunity to be heard. And the claimant here had that opportunity to be heard on the merits. Your Honors, if we don't deal with the standard where you have to show excusable neglect for not responding, it would render the excusable neglect standard meaningless. So, counsel, let me just address that for a second. So he writes that, I absolutely deny having seen the objection to DeSombre's claim. And then he writes, I respectfully submit that for the reasons set forth below, the likelihood and probability that I received that objection, except as aforesaid, is not sufficient to prevent the claim from being heard on the merits. If the judge had determined that he did receive it, if he had pled or argued that I misfiled, my paralegal didn't calendar, presented that testimony, that could fall within the excusable neglect standard under 60B1. I think that's correct, Your Honor, but there was nothing like that. And the Wiley case from the bankruptcy appellate panel says simply denying that you received it is not sufficient to make a case under 60B1. So what you're suggesting is that it actually, 60B1 would be applicable if he had asserted something that it could be decided on. Since he did not, you can't just use 60B6 to say, if you ignore pleadings, if you say you didn't receive things and you just don't look up until after the decision is made, then it's okay for the trial court to use 60B6 to relieve you of your obligation. Your Honors, the cases are very clear. If the situation fits under one of the 60B standards, other than the catch-all provision, and those standards are not applicable or can't be met, you cannot go to 60B6 to save it. So the court was in error by going to 60B6. It was not a harmless error. It mandates reversal. The panel can reverse the court on that basis and vacate the June 13th order, which would effectively reinstate the order disallowing the claim. The Wiley case also says that you don't even get to the merits unless you can get over the 60B hurdle. And it says that you can't look at the merits in order to try and find cause under 60B. Moving to the second prong, Your Honors, is even if there were cause, the merits of the claim objection mandate disallowance. So, counsel, let me just take you back for a second, though, to 60B6. And that is also under the Taney decision and other decisions of the Ninth Circuit, and the Supreme Court requires extraordinary circumstances. And that can't be based on the applicants, the parties seeking moving for relief. It can't be based on their culpable conduct. In this case, that was the only circumstance, wasn't it? Because it has the mailbox rule and there was no proof that you didn't properly serve the original objection and the original rata to the objection. That's absolutely right, Your Honor. There was absolutely no other reason offered for not responding to the claim objection other than I didn't see it. Okay. And certainly nothing that would meet extraordinary circumstances. And there was nothing from the client that was filed, from Mr. DeSombre himself, that indicated either one, he didn't get it, or he joined with the objection of his attorney that neither one of them had seen or had been served with. Your Honor, the record is, I would say, inexplicably silent on that point, which might lead you to infer something, but there was nothing from the client. We're talking about only the attorney's, quote, testimony or argument in the pleadings. That's correct. On the merits issues, Your Honors, you know, the issue here was whether this lease was a fair market value commercial lease under New Jersey law. The basis for the claim was the New Jersey Consumer Fraud Act and the Consumer Protection Leasing Act. Neither of those statutes apply to a fair market value commercial lease. And here, the claimant acknowledges that in its briefs down below, that if this lease is a fair market value commercial lease, the statutes upon which the claim is based do not apply. And the Bankruptcy Court erred in that regard because this is a fair market value commercial lease. It is for a commercial purpose. That is undisputed. And it had a fair market value buyout, according to the express terms of the lease. The lessee had the option, but not the obligation, to purchase the vehicle at the lease end. The purchase price at the lease end was to be the then fair market value. So the parties expressly agreed and intended that the lessee had the option, but not the requirement, to purchase the vehicle at the end of the lease at the then fair market value. It's hard to imagine any other terms in a lease that could be used to meet a fair market value commercial lease. And the Nebraska land case that we talk about in the papers shows this conclusively. And Appellee, in his opening brief at page 7, concedes that Nebraska land disposes of the case on the merits, which is whether the New Jersey statutes apply. Nebraska land says that if the lease contains a formulistic approach to the option buyout price that ignores value factors like age, mileage, and condition, then it would not be a fair market value lease. Our lease here that we're talking about does not have a formula. It says the buyout price will be the then fair market value at the end of the lease. The Nebraska land case says also it's not a fair market value commercial lease if it lacks any evidence of the party's intent to use fair market value as the buyout price. Again, here, the expressed terms of the lease show that it's the fair market value at the end of the lease that would be the buyout price. So let me just interrupt you for one second. You're arguing then that the judge, by deciding to abstain, saying that he believed that there were a myriad of state law issues and statutes that were applicable and he didn't want to resolve those questions and to hear the merits of this because there was pending state court action where they could be resolved. That you want us to determine that that was erroneous under the Tucson Estates factors that he applied? No, we're not arguing that you could or should reverse the abstention issue. But the opinion is in three parts. The first part deals with the 60B argument. The second part deals with whether this is a fair market value commercial lease. And the third part is the abstention. The court in that second part... The second part is could he determine as a matter of law if this was a fair market value. Got it. Exactly. And the court alluded to all kinds of things like maybe the lease could be re-characterized. Maybe there's some other New Jersey law that the claimant hadn't put forth before the court. But none of that was before the court. The claimant has the burden to show the basis for its claim. And had the court just looked at the lease terms itself and the two definitions in the statute that the claimant admits controlled the issue and the Nebraska land case, it could have determined this was a fair market value commercial lease exempt from any of the statutes that form the basis for the claimant's claim. And then, again, upheld the objection to the claim that was originally set forth. So let me just ask you one other question. If we were to determine that the judge acted in abuser's discretion by granting the motion for relief from the original order that disallowed the claim, do we need to get into or address the merits and his determination that the lease was subject to the interpretation that Mr. Crowley has urged that it was not a commercial lease? If you reverse the 60B finding, then I believe the reconsideration motion is denied. The claim disallowance order is reinstated and the claim is disallowed. But the panel could, because everything's in the record and it's looking at the law, make a finding in addition to that that it is a fair market value commercial lease. And I'd like to reserve the rest. Why would that be necessary for us to do if we reversed? Why would we want to make that determination? It wouldn't be necessary, Your Honor. You're correct. I just want to go as far as we have to go or as far as we should go, and I just want to make sure I understand what your argument is. All right. He's trying to reserve his time here. I appreciate it. Thank you. All right. Let's hear from the appellee. Thank you, Your Honor. Let me begin here. I don't know what more we can say about the challenge we have here of attempting to prove a negative, prove that we didn't receive a certificate. The point is you don't have to, right? There's a presumption that something put into the pail, correctly addressed and otherwise done in an appropriate way, got where it was supposed to go. That's got to be met by something other than I don't think I saw it. You're not proving a negative. I mean, you're overcoming a presumption, and I need to know how you're going to do it. Surely the presumption can be rebutted. And when the party that was supposed to receive it didn't receive it, and he says, as I'm saying now, in all earnestness, I didn't see it. I didn't receive it. I don't think our office received it. Then I go on to say, on the merits, why the action that was taken was in fact merited. Let me stop before you get too far. The I didn't get it does not overcome the presumption, period, end of story. Tell us about that. I'm all ears. I don't know where that leaves us. I don't know where that leaves any concept of due process when somebody didn't receive something. They say it's okay because my client got it. We've shown here that their routine practice was to send duplicates of notices, but not to the client at his home, but to our office. Mr. Crowley, I looked at the notice of service, and it listed the address of some address of 120-something, which was in fact what you put in your state court complaint as the residence for Mr. DeSombre when you attached it to your proof of claim. So they didn't just send it care of you. They actually indicated they sent it to him, and what you had indicated in 2017 was his home address when you filed the action in New Jersey. No after the declaration of your client was submitted that he didn't receive it. That wasn't the practice that was normally followed or uniformly followed. Whether it was followed on this instance or not is something I can't confirm or deny either. But again, if simply having failed to receive something, that ends it. I don't know where that leaves me. Certainly the Wiley case is not appropriate, not on point. In the Wiley case, the person admitted that they had received it, and they were having to explain why they didn't act on it, even though they admitted they had it, and also failed a follow-up 10-day rule to take some appropriate action, they failed that as well. And in the face of all that... Mr. Crowley, what you're suggesting is that if you just simply deny receipt, that then you preserve rights that someone who admittedly got it and then has to explain why they didn't act timely, you get a jail-free card. Essentially, all you have to do is deny that it was received, and then all bets are off. You get to go right to the merits of the matter and ignore any culpability on your part to follow what's happening in the bankruptcy case, to check the docket periodically, to make sure that your mail is being properly opened and handled by your staff, that your client didn't in fact receive. You don't have to do anything except just deny. Surely there's an issue of credibility here. Surely the fact that I could falsely deny that I had received it presents a question of credibility. I can certainly acknowledge that. I don't say that I have an automatic right to proceed, but when I said all I had to say before the court about the fact that we hadn't received it, the fact that it was not the petitioner's or the appellant's normal practice to send it to our client at his home, and why can't that entitle me to be heard on the merits? The judge said our argument wasn't particularly cogent. We established that the instant we did see a paper, and it wasn't too long in happening, we did see a paper that made passing reference, very oblique reference, to dismissing our claim, we axed it immediately and we filed an application. Our opponent faults us for filing an application instead of a motion. There wasn't time to prepare a formal motion. The matter was coming on for hearing about the closing of the case, and we had to get our position before the judge, and we succeeded in that regard. I think that says something for us about how conscientious we were and how prompt we were to act on things when we did see them. I don't exactly know what the judge meant when he said it wasn't cogent, but he said in the same breath that it wasn't appropriate for our opponent at that stage to not respond at all to the merits of our argument, and the merits were lacking. If I could, folks, if I could. Mr. Collier, that's because you appeared by telephone at a hearing on closing the case and raised an argument for the first time that you hadn't received proper notice of the objection, and at that point they weren't prepared to address anything because you hadn't formally done anything other than object to the closing of the case. You raised for the first time at that hearing that you had a right to further matters and have the court address further matters with respect to the objection, and that's why the court directed a further hearing on the 12th and then a further hearing in June where the merits were actually addressed by both parties. I mean, it's your lack of diligence or lack of diligence attributable to your side that we find ourselves in this situation, not Mr. Pesciuzzi's failure to do what the docket reflects he did and timely perform the acts that he was required to perform. I don't think it's accurate to say that we didn't call the court's attention to it at the first opportunity we had. I think we explained at that opportunity that we hadn't seen the document and that we were reacting to having seen it in a different document and seeing it for the first time. This is an unbelievably draconian result. Let me ask you something. You claim you didn't get the original objection. You claim you didn't get the errata. Then you got the notice of the closing of the case, which had within it the notice that your claim had been disallowed. You then got every pleading that they filed in opposition to your claim, mailed to the sole, all of those same addresses. It just was miraculous that the one piece that resolved your claim were the only pleadings that you didn't receive, even though they were sent twice to two different addresses, right? I don't know how anybody could respond to that argument. They did what they were supposed to do on several occasions, and on one occasion we didn't get it. We're not saying it was because it wasn't mailed. We have no basis for saying what they did or didn't mail it. We just say we don't think it ever arrived. Mr. Crowley, it's a presumption. We have to deal with it. Unless you've got something to add to why the presumption shouldn't be followed, we can move on and you can make whatever other arguments you'd like to make. Mr. Crowley, Mr. Crowley, why don't you address for us why it was appropriate for the court to rule under 60B-6, and let's move on to that. Because he says it wasn't appropriate when there was a basis under 60B-1. The court nonetheless ruled under 60B-6. Is that something that suits your case? Right. I think we've noted in the papers the remarks of the late Judge Scalia saying that a default would be a proper basis for invoking Rule 60. But why should there be extraordinary circumstances? Well, I guess anything that would be so draconian that would allow a case to proceed when, in this case, there's just overwhelming evidence of fraudulent activity. The overpowering arguments that at every turn the debtor tried to take advantage of our client. If I could turn to the question of fair market value lease, in rereading our papers, it may be that we didn't make that issue as clear as we should have made it. But I'm looking at the so-called definitions section of the Fair Motor Vehicle Leasing Act. And it involves the words fair market value commercial lease appear in two places. One of them is in the definition of lease. And that's the one that our opponent is of interest to him. And he says on the basis of that, that a fair market value lease is exempt from the coverage of the statute. Well, that's true if it is, in fact, a fair market value lease. But that turns you to the other definition that appears as one of the same definitions. It actually defines the term fair market value lease. It means an agreement between the lesser and lessee. We have that here, in which the vehicle is used for commercial purposes. We have that here. And here's the critical part, which provides an option for the purchase of a vehicle by the lessee at its fair market value. And fair market value there is in lowercase letters. The word just used in their generic sense, not as a term of art. So the conditions that make it a fair market value lease have to appear in the document. And if they don't appear, it's not a fair market value lease. So the definition of the lease doesn't apply to it at all. It's not exempt in the lease. But if the agreement provides for the purchase of the vehicle at the end of the lease, and of course the payment occurs at the end of the lease, but the option price has to be provided for in the agreement itself. And it has to be either a figure, or it has to be a formula. And the formula has to recommend self-deferredness. And one would look at the various violations of the statute, including the committal usury statute and the consumer fraud action. But we have to turn to the lease to find out what was said in the lease that could arguably be stretched to mean it provided for a fair market value. And that's where you turn to what we call the gibberish, the nonsense. The purchase price should be determined at no less than replacement cost to the equipment on a going concern basis. What in the world does that mean? We suspect that that was composed in some after hours revelry, and it wasn't intended to be serious at all. It would have been written there for somebody's amusement. It certainly doesn't provide a basis for finding this was a fair market value lease. What else does the lease say? It says that, listen, hard to believe, you agree that our determination of the fair market value purchase shall be determinative of the amount of the purchase object. So they can charge whatever they want. It doesn't matter what the agreement says. And that's supposed to satisfy the conditions of fairness. By no stretch can it be said that. The lean over backwards so far to avoid fairness, you would think that the people who composed this agreement thought fairness was a term of opprobrium, that they were going to be sure that nobody should accuse them of fairness. There's that much. There's the New Jersey criminal usury statute charging vastly in excess of the amount. And all of those considerations, if I'm hearing correctly, are not going to be reached at all because a presumption of correct mailing was conclusive of the mailing. And there's nothing we can do to undo that. There's no dispensation that can be offered for somebody in that circumstance. And one hopes with some urgency that that cannot be the law. And I think we've shown that at every turn, every one of our violations of the law is valid. It wasn't a fair market value lease. It didn't have the things that would have been necessary to make it a fair market lease, that is to say either an actual purchase price or a formula for putting it. It's resolved by the case we cited, the Netherland case. Everything we would have the court say about this case was said by the court in the Netherland case, deciding the matter under New Jersey law. Mr. Crowley, you're about 30 seconds over right now, so if you want to make a last statement, I'd appreciate it. We just don't think that the court should prevent this case from being resolved under New Jersey law and remanded to New Jersey courts for a decision and resolved by courts that are familiar with the statutes in question and can arrive at a fair result. Thank you very much. Mr. Pascuzzi, you've got about five minutes, I think. Okay, I'll be brief, Your Honors. Thank you. I think we've gone over the 60B1 argument pretty well, the presumption of receipt. There's been nothing to rebut that. There's been no excusable neglect shown. 60B6 is not the place to go, the catch-all provision, if 60B1 applies, and it clearly does here. Just in terms of the last statements he was making about the fair market value commercial lease issues, counsel read the definition. You look at the lease here, it says fair market value. He gets confused when he starts applying the statutes that are excluded from applying to fair market value commercial leases. He starts saying there needs to be a specified price or formula, and that just isn't correct. On the usury thing, it's a lease, it's not a sale, so usury doesn't apply. So with that, Your Honors, unless there are any other questions, I'll submit on our papers. I do not. Colleagues, any questions? No, thank you. Thank you very much. Thank you for your good arguments, matters submitted. Thank you. I think that concludes our 1 o'clock calendar? Yes, it does. This session of the Bankruptcy Appellate Panel is now adjourned. Thank you.
judges: Lafferty, Brand, Gan